UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT E. PETERSON,<br><br>Plaintiff,<br><br>v.<br><br>HOLLY LINDSEY; BENJAMIN ALLEN; KEISHA OXENDINE; SCOTT WAYMAN; LAWRENCE WASDEN; KENNETH K. JORGENSEN; IDAHO COURT OF APPEALS; IDAHO SUPREME COURT; TARA JONES; MICHAEL NORTHCUTT; DIRECTOR OF ATF; and UNKNOWN AGENTS OF ATF AND FBI,<br><br>Defendants. | Case No. 2:25-cv-00552-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are three Motions to Dismiss: one filed jointly by Benjamin Allen, Tara Jones, Holly Lindsey, and Keisha Oxendine (Dkt. 3), one filed by the Idaho Court of Appeals and Idaho Supreme Court (Dkt. 5), and one filed by Michael Northcutt (Dkt. 14). Additionally, Plaintiff Robert Peterson moved for an extension of time to respond to the motion filed by the Idaho Court of Appeals and Idaho Supreme Court. Dkt. 10.

Having reviewed the record and briefs, the Court finds the facts and legal arguments to be adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds the decisional process would not be significantly aided by oral argument, the Court will address the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(e)(1)(B). For the reasons stated below, the Court GRANTS the Motion for Extension

of Time, GRANTS the Motions to Dismiss, and DISMISSES the Complaint.

## II. BACKGROUND

Plaintiff Robert Peterson was convicted of possession of sexually exploitative material of children and, as a collateral consequence, has been prohibited from possessing firearms. *See generally Peterson v. Gunderson*, 516 P.3d 1095 (Idaho Ct. App. 2022). Between 2020 and 2022, Peterson unsuccessfully sought to have his civil rights restored by Idaho courts. *Id.* Now, he seeks to hold various federal, state, and local officials and entities liable for allegedly violating his constitutional rights during the 2020–2022 proceedings. Dkt. 1.

Peterson purchased a Browning BDA .380 caliber firearm in February 2020 and submitted the required background check documentation to the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). The background check was not returned within the allotted timeframe, and the firearm was delivered to Peterson. Sometime before May 27, 2020, ATF Special Agent Michael Northcutt informed Peterson that the background check returned, showing a "firearms disability" classification. Northcutt informed Peterson he must surrender the firearm to the ATF or another lawful owner, sell it, or face arrest. Peterson complied and transferred custody of the firearm to a third party.

After surrendering the firearm, Peterson applied for a concealed weapons license and submitted his application to the Shoshone County Sheriff's Office. His application was denied on account of his status as a felon. Peterson subsequently filed suit against the Shoshone County Sheriff in Idaho state district court. Judge Scott Wayman ultimately ruled against Peterson finding that, because he had been convicted of multiple felony offenses

that were all punishable by terms exceeding one year, he was disqualified from possessing a firearm under 18 U.S.C. § 922(g)(1). Because of the federal ban, Peterson could not possess a firearm under Idaho state law either. Peterson then appealed to the Idaho Court of Appeals, which also ruled against him. *See Peterson*, 516 P.3d at 1105. He then requested a rehearing before the Idaho Supreme Court, but his petition was dismissed as untimely. 2022 Ida. LEXIS 118 (Idaho Sept. 21, 2022).

Peterson then filed the first iteration of this lawsuit in federal court in December 2023, seeking damages against various defendants and official capacity relief against the Idaho Courts. *See Peterson v. Gunderson*, Case No. 2:23-cv-00544-BLW ("Case 23-544"). After many months of inactivity, the Clerk of the Court sent Peterson a notice explaining the time for him to serve the summons had expired, but that he could seek an extension. Case 23-544, Dkt. 5. Peterson moved for an extension and Judge Winmill—who presided over that case at the time—granted the request and gave Peterson another 60 days to serve. *Id*. at Dkt. 7. Judge Winmill then reassigned that case to the undersigned as part of a routine re-allotment of cases. *Id*. at Dkt. 8. Peterson's 60-day extension came and went. The Court waited an additional 60 days. Having not heard anything from Peterson for many months, the Court dismissed the case under Federal Rule of Civil Procedure 4(m)—failure to serve. *Id.* at Dkt. 9. Peterson filed a Motion to Reconsider which the Court denied. *Id*. at Dkts. 10, 11. That was June of 2025.

Three months later, on September 24, 2025, Peterson filed the instant suit alleging substantially similar claims as his previously-dismissed suit.

Peterson claims the Defendants "served to unlawfully burden Plaintiff and to

unconstitutionally deny Plaintiff his Creator given Rights to Life, Liberty, Pursuit of Happiness and Righteous Justice under both Constitutions of the State of Idaho and the United States of America." Dkt. 1, at 11. More specifically, he accuses the Defendants of violating his constitutional and statutory rights under federal and state law. Northcutt, along with other ATF and FBI agents, allegedly failed to confirm that Peterson's felony conviction had not been pardoned nor that his firearm rights had not been restored; Gunderson[1] allegedly denied his application for a concealed weapons license; Judge Wayman, assisted by Jones,[2] ruled in favor of Gunderson concerning the denial of his application for a concealed weapons permit; and the Idaho Court of Appeals and the Idaho Supreme Court rejected his arguments on appeal. Although Peterson lists Wasden, Jorgensen, Allen, and Oxendine as defendants, the Complaint is void of any allegations against them.

Peterson seeks restoration of all constitutional rights allegedly denied, remand to the Idaho state courts with constitutional instructions, an award of costs incurred, and monetary damages. *Id.* at 12. He also asks the Court to find that the Defendants have waived sovereign and qualified immunity, and order them to pay Peterson $1,000,000 every calendar year. *Id.*

---

[1] Darrell Gunderson, the Shoshone County Sheriff who denied Peterson's application for a concealed weapons permit, died before this action was filed. Dkt. 1, at 3. Additionally, Holly Lindsey has since resigned from her position as Shoshone County Sheriff, and Shawn Wehr currently holds that position. By operation of law, Wehr is substituted for Gunderson and Lindsey with respect to Peterson's official capacity claims. Fed. R. Civ. P. 25(d).

[2] Peterson does not raise any explicit claims against Jones. But the Court construes the Complaint liberally and interprets that Peterson's claim(s) against Jones arise from her involvement as a deputy clerk of court in Peterson's Shoshone County district case.

On October 31, 2025, Defendants Allen, Jones, Lindsey, and Oxendine ("Shoshone County Defendants") moved to dismiss on several grounds, including common law immunities, the *Rooker-Feldman* doctrine, and the statute of limitations. *See generally* Dkt. 3-1. A few days later, the Idaho Supreme Court and Idaho Court of Appeals ("state court Defendants") moved to dismiss on Eleventh Amendment and *Rooker-Feldman* grounds. *See generally* Dkt. 5-1.

The Clerk of the Court then sent Peterson the Court's standard "Notice to Pro se Litigants" explaining what a motion to dismiss is and how and when Peterson needed to respond to the motions. Dkt. 7.

> The notice included the following warning:
> **Your Response to Any of these Motions is REQUIRED.**
>
> **You are warned** that if you do not file your response opposing the motion within 21 days (or such other time period set by the Court), the Court will consider the facts provided by the moving party as undisputed and **may grant the motion** based on the record before it, or it **may dismiss your entire case for failure to prosecute** (abandonment of your case). *See* Local Rule 7.1(e)(2); Fed. R. Civ. P. 41(b).

*Id*. at 2 (bolding in original). Peterson's responses to the two Motions to Dismiss were due on or before November 21, and November 24, 2025, respectively.

On January 9, 2026—almost six weeks *after* his responses were due—Peterson filed a Motion for Extension of time asking for more time to respond to the *second* motion to dismiss. Dkt. 10.[3] Those Defendants opposed the Motion. Dkt. 11. Before the Court could rule, Peterson filed his response brief. Dkt. 12.

---

[3] It is not clear why Peterson singled out the second motion to dismiss in seeking an extension. But the response he eventually filed only addressed that specific motion as well. *See* Dkt. 12.

Michael Northcutt then moved to dismiss on personal jurisdiction, insufficient service of process, and failure to state a claim grounds. *See generally* Dkt. 14-1. Again, the Court sent Peterson its standard notice and warning. Dkt. 15. To date, Peterson has not responded to the third Motion. It has been over six months since the Court sent Peterson the second notice.

The matters are now ripe for review.

## III. LEGAL STANDARDS

### A. Judicial Notice

"[F]acts subject to judicial notice may be considered on a motion to dismiss." *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1388 (9th Cir. 1987) (citation modified). Federal courts may take judicial notice of proceedings in state courts if they have direct relation to the matters at issue. *Dawson v. Mahoney,* 451 F.3d 550, 551 n.1 (9th Cir. 2006) (citing Fed. R. Evid. 201(b), (c) and taking judicial notice of state court orders and proceedings).

### B. Service of Process

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time" unless the plaintiff can make a showing of good cause. Fed. R. Civ. P. 4(m). Once service is challenged, the plaintiff bears the burden of establishing that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). Dismissal is warranted where service of process is insufficient. Fed. R. Civ. P. 12(b)(5).

The Federal Rule of Civil Procedure 4(i) provides the procedure that must be followed to properly serve the United States and its agencies, corporations, officers, or employees. To sufficiently serve the United States with process, a party must send the summons and complaint by registered or certified mail to the Attorney General of the United States in Washington, D.C. Fed. R. Civ. P. 4(i)(1). That party must also either deliver them to the United States Attorney (or his or her designee) for the district where the case is brought, or send them to the civil process clerk for that district's U.S. Attorney's Office by registered or certified mail. *Id.*

To serve an agency of the United States or an officer or employee sued in an official capacity, the serving party must comply with the requirements set forth in Rule 4(i)(1) and further send the summons and complaint to the agency, officer, or employee by registered or certified mail. Fed. R. Civ. P. 4(i)(2).

Serving a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States requires that the serving party serve both the United States and the officer or employee in accordance with Rule 4(e), (f), or (g). Fed. R. Civ. P. 4(i)(3). Rule 4(e) provides two methods for serving an individual: (1) follow the law of the state where the district court is located or where service is made, or (2) deliver the summons and complaint to the defendant personally, leave them at the defendant's dwelling or usual place of abode with a person of suitable age and discretion who resides there, or deliver them to an agent authorized to accept service. Fed. R. Civ. P. 4(e).

If the serving party fails to comply with the requirements set forth in Rule 4(i), the

case must be dismissed for lack of personal jurisdiction. *Reynolds v. United States*, 782 F.2d 837, 838 (9th Cir. 1986).

**C. Federal Rule of Civil Procedure 12(b)**

Rule 12(b)(1) motions seek dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . . .").

If the jurisdictional attack is facial, the challenger asserts the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Sovereign immunity . . . is a threshold jurisdictional issue." *Donovan v. Vance*, 70 F.4th 1167, 1172 (9th Cir. 2023) (citation modified).

Rule 12(b)(2) motions seek dismissal of a claim for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

Rule 12(b)(5) motions seek dismissal for insufficient service of process. Fed. R. Civ. P. 12(b)(5).

Rule 12 (b)(6) motions seek dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint.

*Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). To state a claim for relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations;" however, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court identified two "working principles" that underlie *Twombly.* First, although a court must accept as true all factual allegations in a complaint when ruling on a motion to dismiss, the court need not accept unreasonable inferences or legal conclusions as true. *Id.* "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.* at 679.

Thus, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1988), or where the allegations on their face show that relief is barred for a legal reason. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

**D. Section 1983 and *Bivens* Claims**

Section 1983 does not itself create substantive rights; instead, it provides a cause of action to vindicate pre-existing rights. *Gonzaga University v. Doe*, 536 U.S. 273, 284–85 (2002). To properly state a claim under § 1983, the plaintiff must allege two elements: (1) the action occurred "under color of state law" and (2) the action resulted in the "deprivation of a constitutional right or federal statutory right." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Actions taken under color of federal law are not actionable under § 1983. *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995).

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an implied cause of action for monetary damages against federal officials in their individual capacities for a violation of constitutional rights. A *Bivens* action is the federal analog to an action brought under § 1983, and a plaintiff asserting such a claim must show that the defendant was acting under color of federal law. *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982). The Ninth Circuit has held that *Bivens* claims may not be raised against state or local officials. *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1383 (9th Cir. 1998).

## IV. DISCUSSION

As a threshold matter, multiple Defendants ask the Court to take judicial notice of Peterson's prior court proceedings—in both state and federal court. *See* Dkt. 3-1, at 7; Dkt. 14-1, at 4. The Court agrees that such is proper under Federal Rule of Evidence 201 and takes judicial notice of the relevant Idaho state court proceedings: including *State v. Peterson*, 226 P.3d 552 (Idaho Ct. App. 2010); *Peterson v. Gunderson*, 516 P.3d 1095 (Idaho Ct. App. 2022), *review dismissed*, 2022 Ida. LEXIS 118 (Idaho Sept. 21, 2022); and *Peterson v. Gunderson*, 2025 WL 1703244 (D. Idaho Apr. 10, 2025), *reconsideration denied*, 2025 WL 1684789 (D. Idaho June 16, 2025).

The Court also GRANTS Peterson's Motion for Extension and will accept his lately-filed brief. Even with this extension, however, Peterson only ever responded to one of the three motions to dismiss. As the Court warned Peterson (twice), his failure to respond to those other motions means the Court can consider the facts presented by those parties as "undisputed" and rule in their favor. That said, the Court will still analyze all arguments put forth by Defendants to be thorough.

Ultimately, the Court must grant each Motion to Dismiss based on the various legal barriers to Peterson's claims. First, Peterson failed to properly serve Northcutt. Second, each defendant is immune from such suits. Third, the *Rooker-Feldman* doctrine deprives this Court of subject-matter jurisdiction over Peterson's claims. Fourth, Peterson's state court loss precludes him from relitigating his claims against Gunderson in this Court. Fifth, Peterson's claims are untimely under the applicable statute of limitations. Sixth, Peterson failed to respond to two of the three motions to dismiss. Seventh, Peterson's claims fail on

the merits.

**A. Insufficient Service**

Northcutt argues Peterson failed to properly serve him, and thus, all claims against him must be dismissed. Dkt 14-1, at 1–2. The Court agrees and dismisses all claims against Northcutt.

Peterson failed to sufficiently serve Northcutt in his official capacity. As proof of service, Peterson filed an affidavit of Scott Morgan, in which Morgan stated he served Northcutt at "1290 W Myrtle St Suite 500 Boise, ID 83702," the office of the United States Attorney for the District of Idaho. Dkt. 13-1, at 3. Peterson has not shown that he served the Attorney General in Washington, D.C. or sent a copy of the summons and complaint by registered or certified mail to Northcutt.

Peterson also failed to sufficiently serve Northcutt in his individual capacity. Again, Peterson has not shown that he served the Attorney General in Washington, D.C. He only shows that he delivered the complaint to the office of the United States Attorney for the District of Idaho. Dkt. 13. He also fails to show compliance with the requirements set forth in Rule 4(e) by serving the Complaint and summons to Northcutt personally, to an agent of his, or to his dwelling.

Peterson's 90-day deadline to effectuate service has long since expired. *See* Fed. R. Civ. P. 4(m). Peterson filed his Complaint in this case on September 24, 2025. Thus, he had until December 23, 2025, to serve or seek an extension. There is no good cause for the failure because he was already instructed in the prior litigation that he needed to serve Northcutt in accordance with Rule 4. Case 23-544, Dkt. 7.

In serving Northcutt, Peterson failed to comply with the procedures set forth in Rule 4 of the Federal Rules of Civil Procedure. Therefore, these claims are dismissed pursuant to Rule 4(m) and Rule 12(b)(5).

**B. Eleventh Amendment and Common Law Immunity**

The Eleventh Amendment bars Peterson's claims against the State Defendants, while common law immunities bar Peterson's claims against the Individual Defendants. Accordingly, those claims must be dismissed.

The Eleventh Amendment bars suits against states and their "arms" without their consent. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). State courts are arms of the state for purposes of Eleventh Amendment immunity. *Munoz v. Super. Ct. of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024). The Eleventh Amendment also bars suits against state officers in their official capacities for damages or retrospective equitable relief. *Ulaleo v. Paty*, 902 F.2d 1395, 1398 (9th Cir. 1990).

Peterson's claims against the state court Defendants are barred by the Eleventh Amendment as they are arms of the State. The Court, therefore, must dismiss Peterson's claims against the Idaho Court of Appeals and the Idaho Supreme Court.

State and local officers sued in their personal capacity are not entitled to Eleventh Amendment immunity, but they may be entitled to common law immunities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). Judges are entitled to "absolute immunity" for "acts performed . . . that relate to the judicial process." *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002) (citation modified). Absolute quasi-judicial immunity extends to court staff when their "challenged activities were an integral part of

the judicial process." *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979) (citation modified).

Likewise, "prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case . . . insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 486 (1991). This absolute immunity extends to state attorneys general supervising or otherwise involved in the prosecutorial functions at issue. *Torres v. Goddard*, 793 F.3d 1046, 1058 (9th Cir. 2015).

Peterson's claims against Judge Wayman and Jones are barred by absolute judicial and quasi-judicial immunity. He claims that these defendants "burden[ed him] with an Unconstitutional ruling denying [his] Constitutional and statutory Rights." Dkt. 1, at 10. However, ruling on questions of law falls squarely within Judge Wayman's judicial role, and none of Peterson's allegations concern acts taken outside that role. Thus, Judge Wayman is protected against Peterson's claims. Likewise, the role of the court clerk is to assist in carrying out those protected judicial functions. Because Peterson raises no allegations against Jones concerning conduct outside of her role in the judicial process, any claims against her are also barred by common law quasi-judicial immunity. Hence, all claims raised against Judge Wayman and Jones must be dismissed.

Peterson's individual capacity claims against Allen and Oxendine are also barred. In his complaint, Peterson lists Allen as the "Former Chief Assistant Prosecuting Attorney and Current Prosecuting Attorney, Shoshone County Idaho" (*Id.* at 3), and Oxendine as "Former Prosecuting Attorney Shoshone County Idaho" (*Id.* at 5). Other than their titles,

Peterson does not allege any facts related to these Defendants or include anything to suggest they are not entitled to prosecutorial immunity. As such, these Defendants are immune from Peterson's claims and all claims against them must be dismissed.

### C. *Rooker-Feldman* Doctrine

"[U]nder what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (U.S. 2006). "If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). *See also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) ("If a plaintiff brings a de facto appeal from a state court judgment [in federal court], *Rooker–Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction.").

The *Rooker-Feldman* doctrine bars Peterson's claims that he was injured by the state court Defendants' error in applying Idaho or federal law. Peterson claims Judge Wayman and the state court Defendants injured him by ruling against him and ratifying unconstitutional judgements. Dkt. 1, at 10. He asks this Court to overturn those rulings and then remand the case back to Idaho courts with accompanying "Constitutional instructions." *Id.* at 12. However, the *Rooker-Feldman* doctrine precludes this Court from exercising subject-matter jurisdiction over such claims. This Court is not a forum for appealing and seeking relief from adverse state court decisions.

That Peterson has repackaged his challenges under the guise of constitutional claims

makes no difference. He cannot relitigate or "appeal" rulings from state court when he already had a full and fair opportunity to litigate the issues he seeks to redress here.

Thus, Petersons' claims that Judge Wayman and the state court Defendants erred in applying Idaho or federal law are DISMISSED, as is his prayer for relief asking the Court to remand to Idaho courts with instructions.

### D. Issue Preclusion

The Shoshone County Defendants argue that, in addition to the *Rooker-Feldman* doctrine, the doctrine of issue preclusion also bars the Court from hearing Peterson's claims regarding the denial of his application for a concealed weapons license. Dkt. 3-1, at 11. This Court agrees in part and dismisses that claim against Lindsey only.

"[28 U.S.C.] § 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). As such, the Court applies Idaho state common law in determining whether issue preclusion applies. Under Idaho state law, issue preclusion bars relitigation of an already adjudicated issue when the following five elements are met:

> (1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation.

*Ticor Title Co. v. Stanion*, 157 P.3d 613, 618 (Idaho 2007).

Peterson's allegations regarding the denial of his concealed weapons license are

barred by the doctrine of issue preclusion on the face of the complaint. First, Peterson had a full and fair opportunity to litigate the issue in Idaho state courts. He brought his arguments to a district court, an appellate court, and the state supreme court, and nothing in the record indicates that these proceedings were anything but full and fair. Second, the issue Peterson raises here regarding the denial of his application for a concealed weapons license is identical to the one he raised in Idaho state court. *See Gunderson*, 516 P.3d at 1098 ("At issue is whether the Sheriff was required to issue Peterson a concealed weapons license despite Peterson's prior felony conviction."). Third, the issue was actually decided in the prior litigation. *Id.* at 1105. Fourth, the judgment in that case is final, with the Idaho Court of Appeals ruling against Peterson on the merits of the case. *Id.* Fifth, Lindsey has privity with Gunderson (the defendant in the state case) because she took over his role as Shoshone County Sheriff. However, Allen, Oxendine, and Jones were not defendants in the prior case, and they do not explain how they share privity with Gunderson.

Thus, the doctrine of issue preclusion bars this claim against Lindsey and it must be dismissed as alleged against her.

**E. Statute of Limitations**

"[T]he statute of limitations for § 1983 actions is borrowed from state personal injury tort law." *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). *Bivens* claims likewise borrow the forum state's statute of limitations governing personal injury actions. *Matthews v. Macanas*, 990 F.2d 467, 468–69 (9th Cir. 1993). Under Idaho state law, the statute of limitations for personal injury actions is two years. Idaho Code § 5-219(4). "Although [state] law determines the *length* of the limitations period, federal law

determines when a civil rights claim *accrues*." *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). "Accrual is the date on which the statute of limitations begins to run; under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (citation modified).

Peterson failed to timely raise his claims. He filed the Complaint on September 24, 2025, so his suit is only timely for acts occurring on or after September 24, 2023. But his most recent injury occurred "on or about September 2022." Dkt. 1, at 8–9. This means Peterson initiated the action approximately one year after the deadline, and he asserts no basis for tolling nor does he provide another justification for the delay.[4] Because Peterson's most recent claim falls far outside of the limitations period, it follows that the rest of his claims are likewise untimely. Therefore, the Complaint must be dismissed on this ground as well.[5]

**F. Failure to Timely Respond**

In the District of Idaho, a responding party "must serve and file a response brief . . . within twenty-one (21) days after service upon the party of the memorandum of . . . the

---

[4] The question may arise as to whether the statute of limitations was tolled during the pendency of Peterson's first federal lawsuit, which was filed *within* the two-year period (December 2023). Peterson does not make this argument anywhere. He has not asked for any type of equitable tolling. Thus, the argument is waived. But substantively, a claim is not automatically tolled just because there is pending litigation. State tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464–65 (1975). Idaho has never recognized a generalized tolling for litigation and the Court sees no reason to extend that principle here (especially sua sponte).

[5] To the extent Peterson asserts state law claims for negligence, malicious prosecution, or other tort theories, such claims are also subject to dismissal. The Idaho Tort Claims Act provides that "[e]very claim against a governmental entity permitted under the provisions of this act or against an employee of a governmental entity shall be forever barred, unless an action is begun within two (2) years after the date the claim arose or reasonably should have been discovered, whichever is later." Idaho Code § 6-911. Any state law claims arise from the same factual predicate as Peterson's federal claims, and, as a result, are subject to the same two-year limitations period. Thus, any state law claims are also time-barred.

moving party." D. Idaho L. Civ. R. 7.1(c)(1). "[I]f an adverse party fails to timely file any response documents required to be filed under this rule, such failure may be deemed to constitute a consent to the sustaining of said pleading or the granting of said motion or other application." D. Idaho L. Civ. R. 7.1(f)(1). The Ninth Circuit has affirmed that a district court may properly grant a motion to dismiss pursuant to a local rule for failure to respond pursuant to local district rules. *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995).

The state court Defendants filed their joint Motion to Dismiss on November 3, 2025. Dkt. 5. Peterson filed his response ninety-four days later on February 5, 2026 (Dkt. 12), amounting to seventy-three days past the deadline. As already held, the Court will exercise its discretion and excuses Peterson's untimeliness since Peterson is a pro se litigant and doing so does not prejudice the state court Defendants.

However, the Court does not excuse Peterson's failure to respond *at all* to the other motions to dismiss. All the more because the Court affirmatively warned Peterson (twice) of the consequences for not responding to the motions. Dkts. 7, 15. The Court interprets this failure as consent to those motions. *See* Local Rule 7.1(f). Thus, the motions to dismiss filed in behalf of Benjamin Allen, Tara Jones, Holly Lindsey, Keisha Oxendine, and Michael Northcutt are hereby granted and all claims against those defendants are dismissed.

**G. Sufficiency of the Complaint**

Finally, even were the Court to set aside the doctrines and rules outlined above, there is still an independent basis for dismissing Peterson's case because his claims do not warrant relief.

*1. Section 1983 Claims Premised on Idaho State Law*

"A claim for violation of state law is not cognizable under § 1983." *Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 952 (9th Cir. 2018) (citation modified).

Section 1983 is an improper vehicle for Peterson to bring claims based on alleged violations of state law. As stated above, § 1983 provides a cause of action only for the deprivation of rights secured by the United States Constitution and federal law; it does not provide a remedy for violations of state laws or rules. As such, Peterson's claims based in violations of state law are not cognizable under § 1983 and must be dismissed.

*2. Section 1983 Claims Premised on Federal Law*

The Defendants properly enforced 18 U.S.C. § 922(g)(1) in refusing to allow Peterson to possess a firearm, and as such, have not deprived Peterson of a federal right. Thus, any claims based upon this theory must be dismissed.

18 U.S.C. § 922(g)(1) prohibits one from receiving or possessing a firearm if he or she has been "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The Ninth Circuit recently reaffirmed the constitutionality of 18 U.S.C. § 922(g)(1). *See United States v. Duarte*, 137 F.4th 743, 746–47 (9th Cir. 2025).

Peterson fails to show he was deprived of any federal rights. He alleges no facts that might support a plausible claim that the federal restrictions on firearm possession imposed by § 922(g)(1) are unconstitutional. Because the conduct alleged consists only of enforcing a facially valid federal law, Peterson has not established that any of the Defendants deprived him of a right secured by the federal Constitution or federal statute. Accordingly,

he cannot state a viable federal civil rights claim based on the enforcement of § 922(g)(1). As such, Peterson has failed to state a claim upon which relief may be granted, and his claims on this basis must be dismissed.

Furthermore, to the extent that any of Peterson's § 1983 claims are alleged against Northcutt, the unknown ATF agents, and the unknown FBI agents (Dkt. 1, at 8–9), those claims must likewise be dismissed. *See Billings*, 57 F.3d at 801.

*3. Non-moving Defendants*

Finally, the Court notes that Defendants Lawrence Wasden and Kenneth Jorgensen have not appeared. However, the proof of service Peterson provided for Wasden and Jorgensen appears facially insufficient because it shows merely that a complaint and summons was served on the Idaho Attorney General, which is not proper service on those former Idaho officers. *See* Dkt. 5-1, at 3. Additionally, Peterson also alleges claims against Gunderson, who was deceased when this action was filed. No proof of service has been filed related to Gunderson. The time to serve these individuals, or seek an extension, has long passed. Accordingly, each is dismissed for insufficient service of process.

## V. CONCLUSION

For the reasons explained above, all three Motions to Dismiss are GRANTED. Because the reasons for dismissal are legal in nature, the Court finds leave to amend will not be granted because no additional or different facts could change its opinion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996) (explaining the Court need not grant leave to amend if amendment would be futile).

## VI. ORDER

**IT IS ORDERED:**

1. Defendants Allen, Jones, Lindsey, and Oxendine's Motion to Dismiss (Dkt. 3) is GRANTED.
2. Defendants Idaho Court of Appeals and Idaho Supreme Court's Motion to Dismiss (Dkt. 5) is GRANTED.
3. Peterson's Motion for Extension (Dkt. 10) is GRANTED and his brief is accepted as filed.
4. Defendant Northcutt's Motion to Dismiss (Dkt. 14) is GRANTED.
5. This case is DISMISSED and CLOSED.

DATED: September 17, 2026

David C. Nye
U.S. District Court Judge